THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>L.L.,<br><br>Defendant. | Cause No. 2:22-cv-0981 RAJ<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>**Note on Motion Calendar: September 30, 2022**<br><br>**Oral Argument Requested** |

Defendant, by and through his undersigned counsel, hereby moves to dismiss Causes of Action 1 through 5 of the Complaint under Rule 12(b)(6) Fed. R. Civ. P. for failure to state a claim for which relief may be granted.

## I   INTRODUCTION

This is another in a series of ill-considered, unfounded lawsuits filed by Bungie, Inc., in a well-publicized campaign "to put cheaters and those who assist them on notice that Bungie does not and will not tolerate cheating in Destiny 2." Regardless of what Bungie "tolerates" when it comes to the actions of others, formal legal proceedings, such as this case, are governed by the law, not Bungie's desires. As with any other litigant, Bungie must plead facts sufficient to show that it is entitled to relief under some recognized theory of recovery and it must do so with sufficient detail to establish a "plausible" basis on which relief might be granted.

Despite the hyperbole of its inflammatory Complaint, complete with supposed threats of arson, potential violence and implied criminal conduct on the part of Defendant L.L., the Complaint fails in its fundamental mission of actually pleading with adequate detail plausible facts sufficient to support its alleged causes of action. For this reason, the causes of action

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 1

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

alleged in the Complaint should be dismissed under Rule 12(b)(6) Fed. R. Civ. P. for failure to state a claim for which relief may be granted.

## II    BACKGROUND

Defendant L.L. is an unemancipated minor who, for several years, has been a fan of the free, "first person shooter," multiplayer computer game "Destiny 2" offered by Plaintiff, Bungie, Inc.  In such games, a multitude of players from around the world and who are typically remote from and not physically in the presence of each other, compete against each other in simulated combat conditions.  Success in such games depends on such things as ascertaining as quickly as possible where threats (hidden or open) may be located and then directing accurate gunfire to neutralize such threats.  Players who are skilled in doing such things advance more rapidly through the game than those who are less skilled.

Because these games are implemented in computer software, it is possible to use ancillary software in conjunction with the games to give players a competitive edge.  For example, various forms of software exist to enable a player to "see" where an otherwise hidden competitive player is located, while other forms of software exist to correct for aiming errors to enable a competitor to fire a more accurate shot than would otherwise be the case.  The use of such ancillary software is regarded by some players as "cheating" and such software is referred to Bungie and other game providers as "cheat software."

Importantly, there is no law against "cheating" in multiplayer computer games, and there is no law against procuring and/or using "cheat software" in playing multiplayer computer games.  Accordingly, the efforts of game suppliers, such as Bungie, to combat "cheaters" center on trying to shoehorn the use of "cheat software" into some recognized and established cause of action, such as copyright infringement and/or breach of contract.  Each of these established and recognized causes of action has its own particular requirements that *must* be met in order to establish a valid claim.

In this action, Bungie vilifies and attacks Defendant L.L. for using one of several available suites of "cheat software" while playing Destiny 2 and making no secret of the fact

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 2

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

he was doing so.  In this action, Bungie tries to shoehorn the *legal* actions of Defendant L.L. into inapposite legal theories where they do not fit and do not belong.  Despite the hyperbole of Bungie's hysterical complaint, the fact remains that Defendant L.L. did nothing unlawful and the claims against him should be dismissed.

### III     BUNGIE'S SHOCKING CLAIMS

**A.     L.L.'s Alleged Bad Behavior**

The bulk of the one-hundred-eighty-three paragraphs of Bungie's Complaint (Dkt. #1) set out in breathless, shocking, and sensational detail the clearly outrageous actions Defendant L.L. supposedly did in violation of Bungie's purported rights.  These include allegations that L.L., "made threats targeting Bungie and its employees," that he "tweet[ed] about his desire to 'burn down' Bungie's office building" and that he "declar[ed] that specific Bungie employees were 'not safe.'"  *Id.* at ¶4.  These include allegations that L.L. has engaged in "*criminal* conduct."  *Id.* at ¶5, (emphasis in original). These include allegations that he is, "an active member of the "OGUsers" account hacking and selling forum."  *Id.*   These include allegations that "he sells (presumably stolen) social media accounts."  *Id.*

In fact, none of the specific acts alleged by Bungie amounts to a violation of Bungie's rights under any established and cognizable cause of action recognized under law.  In short, Bungie's claims amount to little more than that L.L. has publicly made fun of Bungie and has made fun of Bungie's apparently ineffective efforts to combat "cheating in Destiny 2," an "offense" that Congress has not, at present, chosen to make unlawful.

Bungie's complaint also accuses L.L of being, "a serial ban evader and cheater."  *Id.* at ¶24.  Further accusations are that L.L, "has repeatedly livestreamed himself cheating at Destiny 2 on his Twitch channel, miffysworld,"  (*Id.* at ¶25).  Still further accusations are that he, "created an account for which he used the display name '!,'" (*Id.* at ¶26), that he, "preemptively created a second account, for which he used the display name 'GOT 2 GET IT,'" 28,  that he "created another backup account, for which he used the display name 'HoeAnnihilator,'" (*Id.* at ¶30),  that he "created another backup account, for which he used

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 3

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

the display name 'Hoehitter,'" (*Id.* at ¶32),  that he "created another account, for which he used the display name 'TRAP$TAR MIFFY,'" (*Id.* at ¶34), that he, "created another account, for which he used the display name 'ugl1kgwj4kn7emj,'"  (*Id.* at ¶36), that he, "created another account, for which he used the display name 'why,'" (*Id.* at ¶38), that he "created another account, for which he used the display name 'gerogetwo,'"  (*Id.* at ¶40),  that he, "created another account, for which he used the display name 'Bungie,'"  (*Id.* at ¶42), that he, "created another account, for which he used the display name 'bungiemad,'"  (*Id.* at ¶44), that he "created another account, for which he used the display name 'hahahalolxd,'"  (*Id.* at ¶46), that he "created another account, for which he used the display name 'xibaje6864,'"  (*Id.* at ¶48), that he, "created another account, for which he used the display name 'Tourney Winner,'"  (*Id.* at ¶50),  and finally that he, "has created other Bungie accounts which Bungie has not identified and banned,"  (*Id.* at ¶52).

In each of these instances, Bungie was, by its own assertion, able promptly to detect and "ban" these accounts.  *See,* Dkt#1, ¶¶ 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49 and 51.  Importantly, *none* of these alleged actions by L.L. is unlawful under existing law, and Bungie's attempt to force them into some legally enforceable cause of action is misguided.

**B.     L.L.'s Supposed "Threats"**

Under the heading, "[L.L.]'s Threats," Paragraphs 54–64 of Bungie's Complaint, purport to allege actionable "threats" L.L. supposedly made to the safety and well-being of Bungie and some of its personnel.   These include the accusation that L.L., "tweeted an image of the employee badge belonging to Dylan Gafner, one of Bungie's community managers, with the hashtag '#NewProfilePic.'"  Dkt#1, ¶54.  This was followed by L.L.'s subsequent tweet that, "i just realized i'll be moving to a place that's 30 minutes away from dmg [Gafner]."  *Id,* at ¶55.  This was followed by a further tweet from L.L. reading, "he is not safe."  *Id.* at ¶57.

Bungie further alleges that L.L. then tweeted, "it's a warm summer day in portland and dylan has just woken up from his restless slumber. He rolls over to pick up his phone so he

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

can check twitter as he sees that someone is cheating with his full government name as their bungie id." *Id.* at ¶58. This was followed by a further tweet reading, "DYLAN GAFNER LMDOAOAOAOAO." *Id.* at ¶59.

Bungie then alleges that L.L. *himself* confirmed he would be moving to Washington State, home of Bungie headquarters: "i booked a flatbed to take my car from cali to washington. they told us the people who had it before us extended their reservation and offered a dolly instead. upon arrival the morons realized i would have to remove my entire driveshaft if i wanted a dolly to work." *Id.* at ¶60. According to Bungie, not only did L.L. threaten to move to Washington state, he "made it clear that his move to Washington State was complete and that he had no intention of ceasing his threats, offering to commit arson in Seattle and offering a discount 'if it's bungie hq.'" *Id.* at ¶60.

In point of fact, the "image of the employee badge belonging to Dylan Gafner," is itself an image that has freely been distributed around the Internet by others long before it ever came into the possession of L.L.[1] Similarly, L.L.'s "suspicious" move to Washington came about, not because L.L. was "stalking" Bungie's headquarters and executives but, rather, simply because the parent with whom L.L. is living moved to Washington. L.L., as an unemancipated minor, had little choice but to move as well. Finally, how L.L.'s purported offer of "a discount [for arson] 'if it's bungie hq'" can be interpreted as anything other than an obvious juvenile joke is difficult to see.

**C. Bungie's Further Allegations**

Throughout the remainder of its Complaint, Bungie makes further allegations that, while perhaps sounding "bad" to lay listeners, amount to nothing more than, at worst, a breach of contract.[2]

---

[1] https://twitter.com/a_dmg04/status/1527027293284995072?s=21&t=hIvsrzXkMmI9_Ig7A-jjKw

[2] As developed further below, as a minor, L.L. lacked capacity to enter into a binding contract with Bungie and is permitted pursuant to RCW § 26.28.030 to disaffirm all supposed contracts with Bungie, which L.L. by separate document filed concurrently herewith, affirmatively does.

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 5

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Paragraph 65 of Bungie's Complaint alleges that L.L. "has made no attempt to hide his cheating or ban evasion," while Paragraphs 66 through 77 of the Complaint allege such nefarious things as posting tweets showing him cheating while playing Destiny 2 (¶66), announcing he has set up his third account (¶67), posting further tweets saying he will continue to cheat while playing Destiny 2 and acknowledging his multiple accounts (¶¶69, 70), and pointing out the deficiencies in the steps Bungie has supposedly taken against cheating (¶¶71-77). These amount to nothing more than L.L. exercising his First Amendment Right to publicize his own activities and offer his opinion as to Bungie and its efforts to combat "cheating."

Similarly, Paragraphs 78 through 87 of Bungie's Complaint purport to establish that L.L. has somehow acted unlawfully in selling "Destiny 2 emblems and clan names" (¶80) and "accounts" (¶81) that Bungie claims is somehow unlawful. In so doing, Bungie accuses L.L. of being "an active member at OGUsers, (¶79) which it claims is "a website notorious as a marketplace for stolen accounts and other criminal fraud." (¶78). Hiding behind the cover of "information and belief," Bungie further alleges that L.L. "acquired some of the accounts he sold at OGUsers through his own hacking and fraud." (¶83). At Paragraphs 84 and 85 Bungie further alleges that L.L. "is also a member of other online communities that focus on the illicit sales of Destiny emblems." Again claiming "information and belief" Bugnie alleges that L.L., "also bought and sold emblems within those communities." Finally, Bungie alleges, (again on information and belief) that "the 'donation links' [L.L.] describes are links to download a Bungie emblem that was offered as a reward for donating $100 to the Bungie Foundation, Bungie's charitable organization." (¶87).

In point of fact, L.L. purchased and paid the full price Bungie charged for the Bungie "emblems," and the only restriction on their resale or further distribution is Bungie's license imposing a contractual obligation not to do so. Again, there is no specific law, other than basic contract law, that proscribes any such distribution of the emblems, and Bungie itself has cited no such law.

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 6

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

# IV ARGUMENT

## A. The Applicable Law

The days of bare-bones "notice pleading" are over. As clearly established by the Supreme Court in the landmark cases of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the pleading standard of Rule 8, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. As further held by the Supreme Court in *Iqbal,* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' (citing *Twombly,* 550 U.S. at 555) Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement. (citing *Twombly,* 550 U.S. at 557)." *Iqbal,* 556 U.S. at 678.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry,* 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Although Bungie has pleaded numerous details and "facts" regarding L.L.'s admitted "cheating" in playing Destiny 2, his "tweets" making fun of Bungie, and his supposed affiliations with suspected "criminal" cheat organizations, Bungie's allegations are very vague as to how these actions somehow amount to copyright infringement. They are also vague as to how these actions amount to "circumvention of technical measures," "breach of contract," "fraud" and "unfair competition." Accordingly, the claims Bungie makes in its Complaint lack the specificity needed properly to assert numerous elements need actually to establish such causes.

## B. L.L.'s Online Statements Are Not Actionable

Bungie devotes the bulk of its Complaint detailing the supposedly shocking, threatening, and terrifying posts L.L. made on Twitter and other social media outlets. While clearly designed to inflame the court and public against L.L, the fact remains that L.L.'s

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 7

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

online comments are protected free speech under the First Amendment and do not fall into any of the very narrow exceptions thereto. Accordingly, to the extent Bungie's claims are based on the online comments Bungie details in its Complaint, such claims are without legal merit and must be dismissed.

### 1. L.L.'s Online Comments Are Protected Free Speech Under The First Amendment

This Court, in *Rynearson v. Ferguson*, 355 F. Supp. 3d 964 (W.D. Wash. 2019) directly addressed and considered the constitutional considerations and limits regarding online posts made regarding others. Under facts similar to those here, criminal charges were brought against an online poster at the behest of the targets of the poster's criticisms. In declaring that the statute under which the charges were brought, namely Washington's "anti cyberstalking statute, RCW § 9.61.260(1)(b), is unconstitutional, this Court explored in detail and set out the very narrow limits that are placed on speech, including online speech, such as that L.L. engaged in here.

In its analysis, this Court stated that, ""Over the years, the Supreme Court has enumerated certain 'well-defined and narrowly limited' classes of speech that remain unprotected by the First Amendment." *Id.* at 969, citing, *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). In its analysis, this Court identified six narrow classes of speech that are unprotected by the First Amendment as follows:

(a) obscenity, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957);
(b) defamation, *Beauharnais v. Illinois*, 343 U.S. 250, 254-255, 72 S.Ct. 725, 96 L.Ed. 919 (1952);
(c) fraud, *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976);
(d) incitement, *Brandenburg v. Ohio*, 395 U.S. 444, 447-49, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); and
(e) true threats, *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 8
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

355 F. Supp. 3d at 969. In the further words of the Court, "Speech that does not fall into these exceptions remains protected." *Id.,* citing *United States v. Stevens,* 559 U.S. 460, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010).

None of these limited, narrow exceptions to the First Amendment are applicable here, nor has Bungie made any plausible claim that they are.

### 2. L.L. Has Not Made Any "True Threats"

Bungie makes much of L.L.'s supposed threats to Bungie's headquarters and its personnel. Under clearly established law however, to be actionable, such threats must be "true threats," that go far beyond the clearly facetious statements made by L.L., that were clearly not being made seriously and that, more importantly, he had no actual ability to carry out.

The long-recognized "true threat" exception to otherwise constitutionally protected speech is narrow and has exacting requirements. In another case involving similar facts wherein a minor made posts on Facebook alleged to be "threatening," it was noted that, "The Supreme Court has recognized a narrow 'true threat' exception to the First Amendment." *Burge v. Colton Sch. Dist.* 53, 100 F. Supp. 3d 1057, 1067 (D. Or. 2015). As further noted by the court in that case, "Not every off-hand reference to violence is a true threat unprotected by the First Amendment." *Id.* at 1068. "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* citing, *Virginia v. Black,* 538 U.S. 343 (2003) at 359. "The Ninth Circuit has made it clear that 'speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat.'" *Id.,* citing *Fogel v. Collins,* 531 F.3d 824, 831 (9th Cir.2008), quoting *United States v. Cassel,* 408 F.3d 622, 633 (9th Cir.2005). Furthermore, the court in *Burge v. Colton Sch. Dist.,* held that, in civil cases, it is a "subjective test" that is used to determine whether speech constitutes a "true threat."

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 9
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

"Accordingly, if only one standard applies in the civil context, it is the subjective standard." 100 F. Supp. 3d at 1068.

Under the applicable subjective test, the court in *Burge* stated that:

> The subjective requirement of the 'true threat' exception to the First Amendment is met "only if the 'speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' It is therefore not sufficient that objective observers would reasonably perceive such speech as a threat of injury or death.

100 F. Supp. 3d at 1068, citing *United States v. Bagdasarian,* 652 F.3d 1113, 1117.

Here, there is no rational basis for concluding that L.L. meant to "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" as required by clear Ninth Circuit and Supreme Court precedent. Indeed, the very context and words of L.L.'s supposed "threats" demonstrate the lack of any such actual intent.

First, Bungie's claim that L.L. targeted and threatened Dylan Gafner by tweeting, "an image of the employee badge belonging to Dylan Gafner, one of Bungie's community managers, with the hashtag '#NewProfilePic'" is baseless given that Mr. Gafner's employee badge has long been available on the Internet to others beside L.L. and in no way constitutes a breach of Mr. Gafner's privacy.

Second, it is difficult to see how L.L.'s supposed offer of a "discount" for arson "if it's bungie hq" could be considered a serious threat, given that to do so, one would have to believe not only that L.L. was a professional arsonist available for hire, but that he would actually *admit* to being one and would openly solicit business on an public forum, such as Twitter.

Similarly, his post that, "i just realized i'll be moving to a place that's 30 minutes away from dmg [Gafner]," is consistent with the fact that L.L.'s move to Washington was not of his own doing, but a result of his parents' move to Washington. (Indeed, why would L.L. "just realize" that he would be moving to Washington if it was of his own free will rather than that

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 10

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

of someone else?)  Nor were any of L.L.'s supposed threats actually conveyed to Bungie and/or its employees.  In each case, L.L.'s statements were posted publicly on Twitter.  None of them was emailed, texted, or otherwise directed to Bungie or its personnel.

Finally, the supposed threats – "he is not safe" and "keep your doors locked" – do not even amount to the level of "threat" (i.e., "Ya haha she [a teacher] needs to be shot") that was found *not* to be a "true threat" in *Burge v. Colton Sch. Dist.*, s*upra.*

The basis for Bungie's detailing these constitutionally protected public statements by L.L. can only be to portray L.L. in an unfavorable light and to bias both this Court and the public against him.  Despite taking up nearly half of Bungie's Complaint, these constitutionally protected, supposedly "threatening" statements by L.L. do not give rise to a cause of action and cannot be the basis for a valid cause of action.

## C.     There Is No Existing Enforceable Contract Between L.L. And Bungie

It is undisputed that Defendant L.L. is, and remains, an unemancipated minor under the age of eighteen.  Under RCW §26.28.030, L.L. as a minor has the unrestricted right to disaffirm any contract provided only (1) that he does so "within a reasonable time after he...attains his...majority," and (2) that he "restores to the other party all money and property received by him...by virtue of the contract."  Here, L.L. has not yet attained his majority, and, because he never received any money or property from Bungie, there is nothing to restore.  By way of his disaffirmance filed contemporaneously herewith, L.L. has timely disaffirmed any and all contracts he may have had with Bungie.

It is fundamental law in the State of Washington and elsewhere that the formation of a valid contract requires that each of the contracting parties have "capacity" to enter into the contract.  This, in turn, requires that each of the parties be of sufficient age to do so.  In Washington that age is eighteen.  See, RCW 26.28.010.

Because any and all purported contracts between Bungie and L.L. are now void as having been disaffirmed under RCW § 26.28.030, any and all claims herein made by Bungie

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 11

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

based on those contracts, and specifically Bungie's "Limited Software License Agreement," are legally devoid of merit and must be dismissed.

### 1. Bungie's First, Second and Fifth Causes Of Action Should Be Dismissed

Each of Bungie's First, Second and Fifth Causes of Action should and must be dismissed in that each is based on a supposed contract that was entered into by a minor and that is now expressly disaffirmed as noted above.

Bungie's first cause of action, for "Breach of Contract" is expressly based on the "LSLA" that was purportedly entered into at a time when L.L was unquestionably a minor. As that contract has now been formally disaffirmed pursuant to RCW §26.28.030, it is legally treated as if it was never formed, and, accordingly, there can be no viable or plausible cause for "breach" of such contract. Pursuant to RCW §26.28.030, Bungie's sole remedy is, if at all, for restoration of "all money and property received by [L.L.]...by virtue of the contract." As L.L. did not receive any "money and property...by virtue of the [LSLA]," (and Bungie has not pleaded that he has) there is nothing to return. Accordingly, there is no valid basis on which Bungie can properly claim breach of contract and Bungie's first cause of action alleging such breach should and must be dismissed.

Bungie's Second Cause of Action for "Fraud in the Inducement" alleges that, because L.L. tacitly agreed to abide by the LSLA whenever he created an account or played Destiny 2, his doing so while intending to utilize "cheat software" somehow fraudulently induced Bungie to do something it would otherwise not have done.

Given L.L.'s status as a minor, and given that Bungie has *never* to Defendant's knowledge ever restricted Destiny 2 to adults over eighteen, or ever sought to verify the age of players, and given that RCW 26.28.010 establishes eighteen as the age of majority in Washington, the very state in which Bungie resides and specifies as the governing law for its LSLA, Bungie either knowingly knew that minors, ineligible to enter into binding contracts, would nevertheless "agree" (ineffectively) to the LSLA or voluntarily chose to "look the other way." Either way, Bungie did not "rely" on any misstatement of material fact, which is

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 12

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

required for a "fraud" claim, but instead utilized mechanical apparatuses that simply provided access to Destiny 2 whenever anyone signaled supposed "assent" simply by playing Destiny 2. This is evidenced by the fact, set out in detail in Bungie's Complaint at Paragraphs 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49 and 51, that in all instances L.L.'s accounts were detected and deleted within hours after being set up.

Having apparently been "defrauded" by L.L. at least thirteen times, how believable is it that Bungie actually "relied" on L.L.'s supposed "misrepresentations" rather than software that simply and blindly provided access to Destiny 2 whenever anyone "clicked on" or other provided "assent" to the LSLA.

Bungie's Fifth Cause of Action for Violation of the Washington Consumer Protection Act, RCW 19.86.020 is based on Bungie's claim that L.L. violated the Consumer Protection Act by doing three things, namely: (1) making "emblem" sales...in trade or commerce," (Dkt#1, ¶178); (2) purchasing and using, "cheat software...in trade or commerce," (Dkt#1, ¶179); and (3) creating "Twitch streams" that "occurred in trade or commerce." (Dkt#1, ¶180).

However, Bungie has cited no law that makes "emblem sales…in trade or commerce" unlawful. Indeed, the only basis for Bungie's claim that there are restrictions on how such emblems may be bought and sold is to point to its LSLA and say that the LSLA prohibits such sales. In short, such sales are "prohibited" solely because those who enter into the LSLA with Bungie "agree" not to make such sales. However, as noted above, the LSLA is not binding on L.L. Accordingly, and as the LSLA is the only identified basis identified by Bungie for making this claim, the claim is legally defective and must be dismissed.

Similarly, Defendant is aware of no law, and Bungie has certainly not identified any law, that makes it unlawful either to purchase "cheat" software "in trade or commerce" or to use such software "in trade or commerce." In short, what Bungie alleges is a violation of Washington's Consumer Protection Act consists of entirely legal activities on the part of L.L. Until and unless Bungie can identify a law barring the sale and use of "cheat" software and

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

pleads a viable cause of action under any such law, Bungie fails to state a claim for which relief may be granted.

Finally, and as discussed in detail in Section IV B above, L.L.'s various online statements are constitutionally protected speech, not subject to one of the six recognized exceptions, and therefore cannot form the basis of a claimed violation of the Washington Consumer Protection Act.

Because Bungie has failed to plead a plausible claim for violation of the Washington Consumer Protection Act, Bungie's Fifth Cause of Action should and must be dismissed.

### 2. Bungie's Third And Fourth Causes Of Action Should Be Dismissed

Similarly, Bungie's Third and Fourth Causes of Action for "Copyright Infringement" and "Circumvention of Technological Measures" should and must be dismissed as well. In the Ninth Circuit, the law is well settled that the use of ancillary software to achieve an advantage in playing a computer game is not, and cannot be a violation of the copyright laws.

The holding of the Ninth Circuit in *MDY Indus., LLC v. Blizzard Entm't, Inc.,* 629 F.3d 928 (9th Cir. 2010) is directly on point and establishes that Bungie did not, and cannot establish copyright infringement under the facts it alleges. The clear holding of the Ninth Circuit in *MDY* is that the use, by players, of programs to enhance their performance (i.e., "cheat software") does not and *cannot* be a form of copyright infringement. At best, it is a breach of contract terms (i.e., "covenants") subject to different forms and types of remedies than those available under copyright law.

The facts in *MDY* are nearly identical to those here. In *MDY,* the program in question (named "Glider") enabled World of Warcraft ("WoW") players to gain advantages in playing World of Warcraft and, thus, advance more quickly through the game than others. In short, the subject program in *MDY* behaved much in the same manner as the "cheat software" at issue here. Blizzard Entertainment, the owner of World of Warcraft, claimed that MDY's distribution of the Glider program constituted "secondary" or "induced" copyright infringement. In particular, Blizzard Entertainment argued that, when World of Warcraft

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 14

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

players used the Glider program, they violated the terms of the software license granted to them and that violation of those terms resulted in copyright infringement.  The Ninth Circuit soundly rejected that argument, holding that use by players of the Glider program in contravention of the software license was *not* copyright infringement and that any remedy must be pursued, if at all, for tortious interference with contract, a cause of action *not* pleaded by Bungie here.

The direct language of the Ninth Circuit in *MDY* makes this crystal clear:

"To establish secondary infringement, Blizzard must first demonstrate direct infringement." *MDY Industries, LLC v. Blizzard Entertainment, Inc.,* 629 F.3d 928, 937 (9th Cir. 2010), citing *ProCd, Incorporated v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir. 1996). "To establish direct infringement, Blizzard must demonstrate copyright ownership and violation of one of its exclusive rights by Glider users. " 629 F.3d 928 at 937. "MDY is liable for contributory infringement if it has 'intentionally induc[ed] or encourag[ed] direct infringement'" *Id.*  Thus, under the clear holding in *MDY,* for Bungie to plead a legitimate claim of copyright infringement, it *must* plead sufficient facts to establish that *users* of the subject "cheat software" directly infringe one or more of Bungie's purported copyrights.  This Bungie cannot do.

Returning to the actual language of *MDY,* "A Glider user commits copyright infringement by playing WoW while violating a [software license] term that is a license condition.  *To establish copyright infringement,* then, *Blizzard must demonstrate* that the violated term...is a condition rather than a covenant." 629 F.3d 928 at 939 (emphasis supplied). "Wherever possible, equity construes ambiguous contract provisions as covenants rather than conditions." *Id.*  "Applying these principles, [the Software Licenses'] prohibitions against bots and unauthorized third-party software *are covenants rather than copyright-enforceable conditions." Id.* at 40 (emphasis supplied).   "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 15

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

exclusive right of copyright (e.g., unlawful reproduction or distribution)" *Id.* "Consistent with this approach, we have held that the potential for infringement exists *only* where the licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights." *Id.* (Emphasis supplied.)

Finally, and most importantly, the Ninth Circuit in *MDY* directly held that software license provisions purporting to proscribe such things as reverse engineering, "[disrupting] another player's game experience" and use of "cheat" or other third-party software are "covenants" rather than "conditions," and that engaging in such conduct *does not* constitute copyright infringement. The import of this holding is not insignificant or trivial. In the words of the Court, "*Were we to hold otherwise,* Blizzard — or any software copyright holder — could designate any disfavored conduct during software use as copyright infringement, by purporting to condition the license on the player's abstention from the disfavored conduct." *Id.* at 41 (emphasis supplied). As a result, "This would allow software copyright owners far greater rights than Congress has generally conferred on copyright owners." *Id.*

Here, the operative provisions of Bungie's "Limited Software License Agreement" ("LSLA") are functionally the same as those in *MDY*. The operative provision of the "Terms of Use" in *MDY* read:

> You agree that you will not . . . (ii) create or use cheats, bots, 'mods,' and/or hacks, or any other third-party software designed to modify the World of Warcraft experience; or (iii) use any third-party software that intercepts, 'mines,' or otherwise collects information from or through the Program or Service.

*MDY v. Blizzard,* 629 F.3d 928 at 938. The operative provision of the LSLA that Bungie asserts here reads:

> You agree that you will not do, or allow, any of the following:...(8) hack or modify the Program, or create, develop, modify, distribute, or use any unauthorized software programs to gain advantage in any online or multiplayer game modes; (9) receive or provide "boosting services," to advance progress or achieve results that are not solely based on the account holder's gameplay...

Dkt# 34-1, pp. 19-20. Functionally, the relevant provisions of the LSLA are the same as those found by the Ninth Circuit in *MDY* to be the type for which a breach is a breach of

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 16

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

contract rather than "copyright infringement." Accordingly and as found by the Court, "Here, WoW players do not commit copyright infringement by using Glider in violation of the ToU. *MDY is thus not liable for secondary copyright infringement, which requires the existence of direct copyright infringement*" MDY Industries, LLC v. Blizzard, 629 F.3d 928, 941 (emphasis supplied).

Bungie's claim that L.L.'s use of the "cheat software" at issue here directly infringes Bungie's copyrights is barred by the clear holding in *MDY*. Accordingly, this Court, as a matter of law, must dismiss Bungie's Third Cause of Action alleging copyright infringement.

Nor can Bungie properly claim that use of "cheat software" results in the creation of a "derivative work." That particular issue was addressed in *Lewis Galoob Toys, Inc. v. Nintendo of America* 964 F.2d 965 (9th Cir. 1992) wherein the Ninth Circuit expressly held that use of a "Game Genie" device which "functions by blocking the value for a single data byte sent by the game cartridge to the central processing unit in the Nintendo Entertainment System and replacing it with a new value" does *not* result in the creation of a derivative work. *Id.* Bungie has not pleaded sufficient facts to show the unauthorized creation by L.L. of a legally cognizable "derivative work."

As to Bungie's Fourth Cause of Action alleging, "Circumvention of Technological Measures," any such claim requires that Bungie allege facts sufficient to show that L.L. took active steps to disable or otherwise remove supposed "anti cheat" software implemented by Bungie. "as used in § 1201(a), to 'circumvent a technological measure' means 'to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.'" *MDY Industries, LLC v. Blizzard Entertainment, Inc.,* 629 F.3d at 945. Here there is no allegation that L.L. did any of these things. Nor can there be. Bungie nowhere identifies what sort of "anti cheat" software it allegedly uses and nowhere pleads how, if at all, L.L. "descramble[d] a scrambled work, … decrypted an encrypted work, or otherwise...avoid[ded], bypass[ed], remove[d], deactivate[d], or impaired a technological measure, without the

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 17

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

authority of the copyright owner" as required under Ninth Circuit law.  Indeed, the very allegations Bungie makes in its Fourth Cause of Action demonstrate that nothing is "disabled" "descrambled" "decrypted," etc., by the "cheat" software used by L.L.

What Bungie does allege is that its purported, but unidentified, "extensive anti-cheating technological measures" actually do is simply look for "suspicious" activity, such as looking "for unusually rapid or responsive behavior, monitoring problematic or suspicious player activity, and validating client-generated values to ensure that they are within expected ranges." (Dkt#1, ¶165).  In addition, Bungie alleges that it, "controls what data is and is not visible to Destiny 2 users" (Dkt#1, ¶166), and that its "client software renders this data such that players have limited information…" (Dkt#1, ¶167).  Bungie's admission (which it must make) that this is done through "client software" is significant and important.  It means that the data Bungie claims to obfuscate *is actually resident on L.L.'s own computer,* not on any Bungie server.  When using "cheat" software, users are simply accessing data that is in their own computers, which they own and which they are perfectly free to examine and see what files, data, programs, etc., are on their own computers.  Again, Bungie has cited no law (nor can it) that prohibits the owners of computers from accessing data resident on their own computers.  Bungie makes no claim, nor can it, that L.L. without authorization accessed Bungie's own servers and manipulated any data on those servers.

Nor can Bungie legitimately claim that it is somehow unlawful for L.L. to avoid, "suspicious" activity, such as "unusually rapid or responsive behavior," etc. in playing a computer game.  Again, it is not unlawful to conform one's behavior to avoid surveillance by others.  To argue otherwise would be akin to claiming that the use of a speedometer in an automobile to avoid being fined for speeding is somehow "circumventing" the "technological measures" (e.g., radar) of the police, or that by drawing the blinds on one's windows, one is "circumventing" the technology of would be spies.

The remaining claims of Bungie's Fourth Cause of Action are based again on breach of contract.  Because there is no valid contract between L.L. and Bungie, the Fourth Cause of

Motion to Dismiss
Cause No. 22-CV-0981-RAJ

Page 18

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Action cannot stand on a claim of breach of contract and must be dismissed on this further ground as well.

## V. CONCLUSION

At the end of the day, Bungie's Complaint is little more than a screed excoriating L.L. for having the nerve to "cheat" in Destiny 2, publicly call out the deficiencies in the game, poke fun at Bungie, and make no secret of doing it.  Indeed, Bungie's loud, public "splash" about suing L.L. has largely succeeded in chilling any further activities along these lines and in bringing both public and private threats against L.L.

While Bungie is certainly free to pursue legal action, it is not free to ignore the rules, born of bitter experience, that govern such actions and require that it pursue actions recognized under law and that are supported by fact.  Bungie's Complaint fails to allege facts giving rise to claims for which relief may be granted and should be dismissed.

Dated September 8, 2022

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendant

**Declaration of Counsel:**  I, Philip P. Mann, Defendant's counsel, declare under penalty of perjury that on September 8, 2022 at 3:00 pm Plaintiff's counsel, Akiva Cohen and I personally participated in a Zoom conference wherein we considered and discussed the grounds for this motion, the law relied on and the facts related thereto, but after a genuine effort by both to resolve the differences were unable to do so.

*/s/ Philip P. Mann*

Motion to Dismiss
Cause No. 22-CV-0981-RAJ
Page 19
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900