THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC., a Delaware corporation,

    Plaintiff,

v.

L.L., a minor,

    Defendant.

Case No. 2:22-cv-0981-RAJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

THIS MATTER comes before the Court on Defendant's Motion to Dismiss ("Motion"). Dkt. # 18. Having reviewed the briefing, the relevant record, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## II. BACKGROUND

The following is taken from Plaintiff's complaint, which is assumed to be true for the purposes of Defendants' motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir. 2002).

On July 15, 2022, Plaintiff Bungie, Inc. ("Bungie") filed a complaint against Defendant L.L. for (1) breach of contract, (2) copyright infringement, (3) fraud, (4) Digital Millennium Copyright Act ("DMCA") anti-circumvention, and (4) violation of the Washington Consumer Protection Act ("CPA"). Dkt. # 1. Plaintiff developed a first-

ORDER – 1

person shooter video game called *Destiny 2*. *Id.* ¶ 1. Plaintiff claims that Defendant breached the Limited Software License Agreement ("LSLA") when he used cheating software to gain a competitive advantage, streamed himself on Twitch playing *Destiny 2* using that cheating software, and sold *Destiny 2* emblems (digital art badges obtained by in-game achievements) on "OGUsers," a hacking and selling forum. *Id.* ¶¶ 1, 2, 5, 6. Moreover, Plaintiff claims Defendant committed fraud and circumvented Plaintiff's technological measures when he continuously agreed, then subsequently violated, the LSLA by making new accounts (thirteen in total) every time he was banned for cheating. *Id.* ¶¶ 2, 173-175. Lastly, Plaintiff claims Defendant also circumvented Plaintiff's technological measures by using cheat software designed to avoid detection by Plaintiff's anti-cheat software. *Id.* ¶¶ 164, 169, 172.

Plaintiff also provides statements from Twitter written by Defendant that detail his alleged cheating, streaming, and selling. *Id.* ¶¶ 65-77, 87. These statements also detail purported threats to Defendant's content moderators. *Id.* ¶¶ 54-64.

Pursuant to RCW § 26.28.030, Defendant properly disaffirmed all contracts between himself and Plaintiff due to his status as a minor. Dkt # 17. Defendant moved to dismiss for failure to state a claim, which is currently before the court. Dkt. # 18.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

ORDER – 2

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### IV.  DISCUSSION

Defendant's Motion argues Plaintiff's claims for (1) breach of contract, (2) fraud in the inducement, (3) copyright infringement, (4) circumvention of technological measures, and (5) violation of the CPA must be dismissed under Rule 12(b)(6) for failure to state a claim. Dkt. # 18 at 1. The Court will address each claim in turn.

**A.  Breach of Contract**

Defendant argues the breach of contract claim should be dismissed because there is no enforceable contract between Defendant and Plaintiff. Dkt. # 18 at 11-2. Defendant was a minor when he agreed to the LSLA and, pursuant to RCW § 28.28.030, has properly disaffirmed the contract for lack of capacity. Dkt. # 17. Defendant therefore asserts that there is no basis for Plaintiff's breach of contract claim. *Id.* at 12. In response, Plaintiff concedes that Defendant's disaffirmance of the contract renders the contract void and eliminates any breach of contract liability. Dkt. # 19 at 9. As such, Plaintiff recommends the Court dismiss the breach of contract claim. *Id.* at 10.

Because Defendant properly disaffirmed the contract under RCW § 28.28.030, Defendant is no longer bound by its terms. *See Paulson v. McMillan*, 8 Wn.2d 295, 299 (1941) (holding an "infant" is bound by the contract until and unless he properly disaffirms it). Accordingly, the Court grants Defendant's motion to dismiss the breach of contract claim without prejudice.

**B.  Fraud in the Inducement**

Defendant contends that Plaintiff did not rely on any misstatement of material fact

ORDER – 3

as required for fraud because Plaintiff either knew that minors would assent to the LSLA or chose to "look the other way" and rely on software that provided access to anyone who agreed to abide by the LSLA. Dkt. # 18 at 12-13. In response, Plaintiff argues that (1) they have plead clearly all nine elements required for fraudulent inducement, Dkt. # 19 at 10, and (2) reliance is a factual issue that must be taken as true on a motion to dismiss. *Id.* at 11.

The Court agrees with Plaintiff. There are nine essential elements that a plaintiff must show to bring a claim of fraudulent inducement: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it was made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elcon Const., Inc. v. Eastern Washington University*, 174 Wn.2d 157, 166 (2012). Reasonable reliance is a question of fact. *Aliya Medcare Finance, LLC v. Nickell*, 156 F.Supp.3d 1105, 1123 (C.D. Cal. May 26, 2015); *see also Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 363 (9th Cir. 2005) (holding plaintiffs adequately plead reasonable reliance in their amended complaint).

Defendant's argument that Plaintiff did not rely on any misrepresentation fails. In the complaint, Plaintiff states they relied on Defendant's purported acceptance of the LSLA because Plaintiff had no way of knowing the account accepting the LSLA was an account made by Defendant. Dkt. # 1 ¶¶ 143-5. Because the Court must assume the facts alleged in the complaint are true, Plaintiff's contention that they relied on Defendant's misrepresentation that he would abide by the LSLA is assumed to be true. Whether Plaintiff reasonably relied on any alleged misrepresentation by Defendant is a question to be addressed at a later stage of the litigation. *See Cleverly v. Ballantyne*, No. 212CV00444GMNGWF, 2013 WL 12320134, at *10 (D. Nev. Aug. 29, 2013). Plaintiff has alleged sufficient facts to state a claim. *Id.* ¶¶ 68, 75, 114, 119, 135-146. Therefore,

ORDER – 4

the Court denies Defendant's motion to dismiss the fraudulent inducement claim.

### C. Copyright Infringement

Defendant argues the use of ancillary software to gain an advantage in gameplay is not copyright infringement because (1) the use of the cheat software did not create a derivative work, and (2) the anti-cheat language in the LSLA are covenants, not conditions, which requires any remedy pursued to be based in contract, not copyright infringement. Dkt. # 18 at 14-17. Plaintiff counters that Defendant's disaffirmance of the LSLA renders each of his uses of *Destiny 2* infringing and any subsequent play on new accounts unlicensed because Defendant fraudulently represented his intent to abide by the LSLA. Dkt. # 19 at 12.[1] Plaintiff also asserts that even without the disaffirmance and the alleged fraudulent inducement, Defendant still infringed for two reasons: (1) the anti-cheat language in the LSLA are conditions, and (2) the cheating created an unauthorized creation of derivative work. *Id.* at 15-17.

Plaintiff's arguments are persuasive. To establish a copyright infringement, Plaintiff must show (1) ownership of the allegedly infringed material, and (2) that the alleged infringers violated exclusive rights granted to the copyright holder under the Copyright Act. *Disney Enters., Inc. v. VidAngel. Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The owner of a copyright has the exclusive right to prepare derivative works based on its original work. *DC Comics v. Towle*, 803 F.3d 1012, 1023 (9th Cir. 2015). A derivative work is a "work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work." *Id.* If a third party creates a derivative work without consent from the copyright owner, the owner may sue for copyright infringement. *Id.*

First, it is undisputed that Plaintiff owns copyrights to *Destiny 2* both as a software

---

[1] Plaintiff indicated in their response to this Motion that they plan to amend the complaint to assert that all of Defendant's "downloads, uses, and streams of *Destiny 2* were infringing, including his initial download, uses, and streams prior to his first violation of the LSLA." Dkt. # 19 at 15. Plaintiff is free to amend their complaint within 14 days of this order to include the additional copyright infringement claims.

ORDER – 5

program and an audiovisual work. Dkt. # 1 ¶ 149. Second, the cheat software transformed *Destiny 2* by manipulating the software to add visual elements overlayed on the original visuals in the game. *Id.* ¶¶ 151-2. Defendant did not have consent from Plaintiff to do so. *See Id.* ¶ 22. Plaintiff therefore sufficiently alleges that Defendant created an unauthorized derivative work and violated Plaintiff's exclusive rights.

Moreover, Plaintiff's argument that the anti-cheat provision of the LSLA is a condition is also persuasive. Conditions and covenants are distinguished according to state contract law. *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010). Under Washington law, a breach of a condition prevents the promisor from "acquiring a right" or "deprives it of one." *Tacoma Northpark, LLC v. NW, LLC*, 123 Wn. App. 73, 79 (2004). Moreover, contractual terms that limit a license's scope are conditions and breaches of those conditions constitute copyright infringement. *Ticketmaster LLC v. Prestige Entertainment, Inc.*, 306 F.Supp.3d 1164, 1172 (C.D. Cal. Jan. 31, 2018).

The anti-cheat provision of the LSLA is a condition. The pertinent language of the provision states that "any use of the Program in violation of the License Limitation will result in an immediate termination of your license." Dkt. # 19 at 13. This language makes the provision a condition. By violating the provision, the violator's license to play *Destiny 2* will be terminated, thus depriving the violator the right to play *Destiny 2* and limiting the license's scope.

Because Plaintiff has alleged sufficient facts to show the cheat software created an unauthorized derivative work and that the anti-cheat provision is a condition, the Court denies Defendant's motion to dismiss on the copyright infringement claim.

### D. Circumvention of Technological Measures

Defendant asserts that Plaintiff cannot show that Defendant's use of cheat software disabled, descrambled, or decrypted Plaintiff's anti-cheat software. Dkt. # 18 at 17-18. In response, Plaintiff claims Defendant circumvented technological measures in

ORDER – 6

two main ways: (1) he used the cheat software to avoid detection or bypass Plaintiff's anti-cheat software and scrambled location data, and (2) he created new accounts and agreed to the LSLA every time he was banned to avoid or bypass Plaintiff's access control to the game. Dkt. # 19 at 18-21. Plaintiff also contends a statement written by Defendant on June 11, 2022 via Twitter, shows a violation of the DMCA. *Id.* at 17. This statement, however, is not the basis for Plaintiff's claim in their complaint. Therefore, the Court declines to consider it.

The DMCA generally prohibits circumventing a technological measure that effectively controls or protects access to a work protected under [the Copyright Act]. 17 U.S.C.A. § 1201(a). To state a claim under the DMCA, Plaintiff must allege that (1) the work at issue was protected under the Copyright Act; (2) the copyrighted work was protected by a "technological measure," and (3) the technological measure was "circumvented" in order to obtain access to the copyrighted work. *Id.* at § 1201(a)(1)(A). Circumvention means to "descramble a scrambled work, to decrypt an encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* at § 1201(a)(3)(A).

First, Plaintiff holds multiple copyright registrations for *Destiny 2*, making the game protected under the Copyright Act. Dkt. # 1 ¶ 149. Second, *Destiny 2* is protected by multiple technological measures, namely Plaintiff's anti-cheat software and its access control measures. *See MDY Industries, LLC*, 629 F.3d at 954 (stating anti-cheat software is a technological measure); *see also 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F.Supp.2d 1085, 1094-5 (N.D. Cal. Feb. 19, 2004) (holding that a CSS license key is a technological measure that controls access to copyrighted work); *see also Synopsys, Inc. v. InnoGrit. Corp.*, 2019 WL 4848387, at *8 (N.D. Cal. Oct. 1, 2019) (explaining "unauthorized use of license keys or passwords" constitutes "circumvention" under the DMCA). Third, those technological measures were circumvented by Defendant. He bypassed the license access control measures put in place by Plaintiff when he agreed to

ORDER – 7

the LSLA with no intention to abide by it in order to gain access to *Destiny 2* after being banned. Dkt. # 1 ¶¶ 24-53, 65-70, 75, 170, 175. He bypassed Plaintiff's login step control measures when he created new accounts after being banned. *Id.* ¶¶ 74, 168. He used cheat software to avoid detection by Plaintiff's anti-cheat technology. *Id.* at ¶ 169. Plaintiff has sufficiently plead facts that support a claim for a violation of the DMCA.

The Court is not persuaded by Defendant's cherry-picked reading of the DMCA that only establishes a violation when the Defendant decrypts, descrambles, or disables Plaintiff's software. *See* Dkt. # 18 at 17-8. When read as a whole, the statute clearly states that avoiding or bypassing a technological measure violates the DMCA. *See* 17 U.S.C.A. § 1201(a)(3)(A). Therefore, the Court denies Defendant's motion to dismiss the circumvention of technological matters claim.

**E. Washington Consumer Protection Act**

Defendant argues that no laws prohibit the use of cheat software or the selling of *Destiny 2* emblems in trade or commerce, and that his statements on Twitter are protected by the First Amendment and cannot used as a basis for a CPA violation claim. Dkt. # 18 at 13. Using cheat software and selling emblems, Defendant claims, is only prohibited because the LSLA prohibits them. *Id.* Defendant contends that since the LSLA is no longer binding against him there is no basis for Plaintiff's claim. Dkt. # 18 at 13. In response, Plaintiff makes three arguments: (1) a CPA violation need not allege that the conduct as issue violated any statute, (2) the Washington Supreme Court found that speech violated the CPA, and (3) Defendant's conduct fits squarely within the purpose and scope of the CPA. Dkt. # 19 at 22-23.

Plaintiff's arguments fail. To prevail on a CPA claim, Plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) a causal link between the unfair or deceptive act and the injury. *Burlington Insurance Company v. Blind Squirrel, LLC*, 228 F.Supp.3d 1160, 1170 (E.D. Wash. Jan. 10, 2017); *see also* RCW

ORDER – 8

19.86.020.

It is unquestioned that Defendant's alleged cheating, selling of emblems, and streaming is an unfair or deceptive act occurring in trade or commerce that caused injury to Plaintiff's business. Dkt. # 1 ¶¶ 7-8, 20, 65-87, 100, 125, 180, 183. However, Plaintiff fails to show that Defendant's alleged conduct is of public interest. Generally, a breach of a private contract affecting only the parties to the contract is not an act that affects the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790 (1986). The factors that indicate a public interest in a private dispute include the following: (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions? *Id.* at 790-1. Moreover, the public interest element may be satisfied by a showing that a statute has been violated which contains a specific legislative declaration of public interest impact. *Id.* at 791.

Here, Defendant's conduct only affects the parties in this matter. There is no statute with a legislative declaration of public interest that has been violated, and none of the public interest factors are satisfied. Indeed, Defendant did not engage in this activity as part of a business, he did not advertise to the public or to Plaintiff directly, and if anything, Plaintiff was in a greater bargaining position as a large corporation. While Defendant did made statements about his alleged conduct on Twitter, those statements are not the basis for Plaintiff's consumer protection claim: they are not solicitations rising to the level of a consumer transaction. Dkt. # 1 ¶¶ 65-77, 87; *see also Haner v. Quincy Farms Chems., Inc.*, 97 Wn.2d 753 (1982) (holding plaintiff farmer's purchase of defective wheat seed from large agriculture companies was a consumer transaction); *see also Lidstrand v. Silvercrest Indus.*, 28 Wn.App. 359 (1982) (stating plaintiff buying a defective mobile home from defendant corporation was a consumer transaction). Therefore, Plaintiff fails to alleged the public interest element. As such, the Court grants

ORDER – 9

Defendant's motion to dismiss the CPA violation.

## V.     CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendant's Motion. Dkt. # 18. Within 14 days of the date of this order, Plaintiff may submit a first amended complaint if it so chooses.

DATED this 9th day of May, 2023.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 10